UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRAL DRM, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>UONG SY THANH,<br><br>        Defendant. | Case No. 3:24-cv-00731-JSC<br><br>**ORDER RE: MOTION FOR DEFAULT JUDGMENT AND VIRAL DRM'S STANDING**<br><br>Re: Dkt. Nos. 27, 35 |

Viral DRM LLC brings copyright infringement claims against Uong Sy Thanh alleging they downloaded and copied Viral DRM's copyrighted materials from YouTube, and then re-uploaded infringing versions of its copyrighted media content to their YouTube channel NA Weather. This is one of several related copyright infringement actions. *See* Case Nos. 23-4300, 23-5045, 23-5594, 23-5977, 23-6261, 23-6598, 24-733, 24-739, 24-746, 24-747. After Defendant failed to respond to the Complaint, Viral DRM moved for entry of default, which the Clerk granted, and now moves for entry of default judgment. (Dkt. Nos. 23, 27.[1]) At the hearing on Viral DRM's motion for default judgment, the Court raised an issue regarding Viral DRM's standing to bring the copyright infringement claims and directed Viral DRM to submit a copy of its license with the copyright holders. (Dkt. No. 32.) After reviewing Viral DRM's response, the Court issued an Order to Show Cause (OSC) as to Viral DRM's standing to bring the copyright infringement claims at issue here. (Dkt. No. 35.)

Viral DRM has filed the exact same OSC response in each case—without any citations to the record or even tailoring the responses to the facts of the particular case. *See* Case Nos. 23-

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

4300, Dkt. No. 112; Case No. 23-5045, Dkt. No. 78; Case No. 23-5594, Dkt. No. 75; Case No. 23-5977, Dkt. No. 61; Case No. 23-6598, Dkt. No. 56; Case No. 24-731, Dkt. No. 39; Case No. 24-733, Case No. 24-739, Dkt. No. 42; Case No. 24-746, Dkt. No. 49; Case No. 24-747, Dkt. No. 42. Viral DRM's response fails to demonstrate it has standing to bring the claims under 17 U.S.C. §§ 501(b), 1201, 1202. Those claims are therefore dismissed without leave to amend. Viral DRM does have standing to bring its claim under 17 U.S.C. § 512(f) and default judgment is entered in its favor on this claim.

## DISCUSSION

Viral DRM is "a syndicator of award-winning videographic content created by talented videographers." (Dkt. No. 1 at ¶ 14.) According to the Complaint, Viral DRM is "affiliated" with WXChasing LLC, "a video production company that creates some of the videographic Works that Viral DRM syndicates and licenses," and Live Storms Media LLC, "a licensing broker of video content owned by or exclusively licensed to Viral DRM and WXchasing." (*Id*. at ¶ 15.) Viral DRM alleges it "was the exclusive licensee of the Works at issue in this case" and it "registered the Works at issue in this case with the Register of Copyrights pursuant to 17 U.S.C. § 411(a)." (*Id*. at ¶¶ 38, 39.) The Registration Certificates attached to the Complaint, however, show one of the works is registered to "Michael Brandon Clement" and "Brett Adair," jointly, and the other work is registered to "Reed Trimmer." (Dkt. No. 1-2.)

According to Clement's declaration in support of the motion for default judgment, he is a principal and one of the owners of Viral DRM LLC. (Dkt. No. 27-2 at ¶ 1.) Mr. Clement attests "[a]ll the works are exclusively licensed to Viral DRM for distribution and syndication pursuant to written agreements that provide Viral DRM with the necessary rights to sue for the infringements at issue in this case." (*Id.* at ¶ 8.) Following the hearing on the motion for default judgment, Viral DRM filed its "Exclusive Copyright Management Agreement" purportedly with the videographer holding the copyrights. (Dkt. No. 33-3.) Not so. As explained above, the copyright registration submitted is held by Michael Brandon Clement and Brett Adair jointly, and Reed Trimmer, but the Agreement offered here is between Viral DRM and "Ronald Brian Emfinger." (*Compare* Dkt. No. 1-2 *with* Dkt. No. 33-3.) Mr. Emfinger is listed as the author of the work for which Mr. Clement

1  and Mr, Adair are the copyright claimants. (Dkt. No. 1-2 at 3.)  Viral DRM has since filed its

2  license agreements with Clement, Adair, and Timmer, as well as a response to the Court's Order

3  to Show Cause as to its standing to bring the claims here.  (Dkt. No. 36-1 at 3-20; Dkt. No. 39.)

### A.  Copyright Infringement under Section 501(b)

Section 501(b) of the Copyright Act specifies who has standing to sue for infringement: "The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the [registration] requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Section 106 sets forth an "exhaustive list" of those exclusive rights. *Silvers v. Sony Pictures Entm't., Inc*., 402 F.3d 881, 887 (9th Cir. 2005) (en banc) (citing 17 U.S.C. § 106). These include:

> the rights "to do and to authorize" others to do six things with the copyrighted work: to reproduce the work, to prepare derivative works based upon the work, to distribute copies of the work, to perform the work publicly, to display the work publicly, and to record and perform the work by means of an audio transmission.

*Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997, 1002 (9th Cir. 2015) (quoting 17 U.S.C. § 106).  In *Minden*, the Ninth Circuit held "either an assignment (which transfers legal title to the transferee) or an exclusive license (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in a copyright for the purposes of the Act." *Minden*, 795 F.3d at 1003 (emphasis in original). In contrast, a "'nonexclusive license' does not constitute a 'transfer of copyright ownership' and therefore cannot confer standing to assert an infringement claim." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017) (citing 17 U.S.C. § 101).

According to the Agreements between Viral DRM and Clement, Adair, and Timmer, the copyright holder—referred to as a "Content Creator"—grants Viral DRM:

> 1. <u>Grant of Exclusive Agency Rights</u>. Content Creator hereby grants to VDRM the exclusive agency rights to manage and administer any content submitted by Content Creator to VDRM (the "Works"), including but not limited to the right to search for copyright infringements of the Works, to register copyrights for the Works with the United States Copyright Office; to authorize VDRM's attorneys to negotiate settlements, issue takedown notices pursuant to the Digital Millennium Copyright Act or otherwise file claims on behalf of the Content Creator in an effort to enforce the copyrights in and to the Works; Content Creator grants VDRM exclusive agency rights to display, store, transmit, and distribute Works as needed to fulfill obligations set forth in this agreement.

(Dkt. No. 36-1 p. 3 at ¶ 1; p. 10 at ¶ 1, p. 17 at ¶ 1; Dkt. No. 33-3 at ¶ 1.) The Content Creator otherwise retains all copyright and ownership rights in the work. (*Id.* at ¶ 3.)

In response to the Court's OSC, Viral DRM circularly argues "[t]he grant of 'exclusive agency rights' in the agreements between videographers and Viral DRM are sufficient to appoint Viral as exclusive owner of at least one of the § 106 rights and provide Viral with standing to sue" because in order to "fulfill its responsibility to 'manage and administer any content'" Viral DRM "must be empowered to 'display, store, transmit, and distribute Works as needed to fulfill obligations set forth in this agreement.'" (Dkt. No. 39 at 4-5.) That Viral DRM believed its licensing agreements would allow it to bring the copyright infringement claims before the Court does not confer standing under Section 501. Statutory standing cannot be willed into existence. In this case, it is a matter of contract and it exists or it does not. As the Court previously noted:

> Giving Viral DRM the rights necessary to enforce the videographer's copyright, is not the same as the exclusive right to "authorize third parties to reproduce, distribute, and display the photographs" required to have standing to bring a copyright infringement action. *Minden* [*Pictures, Inc. v. John Wiley & Sons, Inc*., 795 F.3d 997, 1005 (9th Cir. 2015)]; *see also Silvers* [*v. Sony Pictures Ent., Inc*., 402 F.3d 881, 884 (9th Cir. 2005)] ("The right to sue for an accrued claim for infringement is not an exclusive right under § 106."). Unlike the agreement in *Minden*, the Agreement does not give Viral DRM the exclusive right to authorize third parties to reproduce, distribute, and display the copyrighted video.

(Dkt. No. 35 at 5.) Accordingly, under binding Ninth Circuit precedent, Viral DRM lacks standing to bring a copyright infringement claim under Section 501(b).

**B.  Removal and Misrepresentation of CMI under Sections 1202(a), (b)**

Viral DRM's 17 U.S.C. §§ 1201, 1202 claims allege the CMI watermarks identify the Works as the property of Live Storms Media. (Dkt. No. 1 at ¶ 67.) Under 17 U.S.C. § 1203, "[a]ny person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation."

Viral DRM has not established it has standing to bring a claim challenging removal and falsification of Live Storms Media's watermark. According to the Complaint, Viral DRM is "affiliated" with WXchasing LLC, and Live Storms Media LLC, and "Live Storms Media is a licensing broker of video content owned by or exclusively licensed to Viral DRM and

4

1  WXchasing." (Dkt. No. 1 at ¶ 15.)  The CMI claims are only brought as to the works authored by

2  Timmer and Emfinger. (Dkt. No. 27-3.) While the record contains evidence of license

3  agreements with Timmer, Emfinger and Viral DRM, these agreements do not mention Live

4  Storms Media. To further complicate things, Viral DRM's response to the OSC indicates "[s]ince

5  this case was filed, Viral DRM's status as a partner with L[ive Storms Media] in the syndication

6  and distribution business underwent a change" and because of "disagreements" between Clement

7  and Brett Adair, the manager of [Live Storms Media]" Mr. Adair has assigned his interest in Viral

8  DRM to Clement. (Dkt. No. 39 at 2-3.)  On this record, it is impossible to unravel the web of

9  connections between all the entities and individuals here and determine the relationship between

10  the entities and individuals involved with the copyrighted works at issue.  Given the lack of clarity

11  regarding Live Storms Media's relationship with Viral DRM, the videographers, or the Works at

12  issue, Viral DRM has not demonstrated it has standing to bring a claim regarding the removal of

13  Live Storms Media's watermark from the Works.

### C.   DMCA False Counternotices under Section 512(f)

Section 512(f) authorizes claims for damages for material misrepresentations by the "copyright owner or copyright owner's authorized licensee." 17 U.S.C. § 512(f). Viral DRM has established its standing to pursue this claim as (1) it has produced evidence of a licensing agreement between it and Emfinger and Timmer[2]; (2) the DMCA takedown notices were submitted on behalf of Viral DRM by Michael Clement who is identified as the Digital Rights Manager; and (3) Viral DRM has submitted copies of the counternotifications for each Work. (Dkt. No. 36-1 at 3-20; Dkt. No. 1-3 at 25-30.) The Court thus proceeds to consider its motion for default judgment as to this claim.

This Court has jurisdiction to enter default judgment as it is brought under the federal Copyright Act. 28 U.S.C. § 1331; 17 U.S.C. § 512. By submitting a counternotification Defendant consented to personal jurisdiction in this District. (Dkt. No. 1-3 at 25-30.) Further, each of the *Eitel* factors favors default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72

---

[2] The Section 512(f) claim is only pled as to videos for which Timmer and Emfinger are listed as authors. (Dkt. No. 27-3.)

United States District Court
Northern District of California

(9th Cir. 1986). The Complaint's allegations as to the DMCA claim are well pled and state plausible claims for relief, and Viral DRM has presented reliable evidence in support of this claim. Defendant never appeared even though he was properly served. Defendant's decision not to respond suggests that no material facts are in dispute. And his failure to appear makes any decision on the merits impossible. So, a default judgment is the only recourse Viral DRM has.

The amount of money at stake for this claim—$5,000—is not excessive, although Viral DRM has failed to justify the amount sought. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Under Section 512(f), any person who makes a misrepresentation:

> shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f). In drafting the statute, Congress did not limit damages to monetary loss or other forms of specific relief even though such limitations are included in other sections of the DMCA. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1156 (9th Cir. 2016) ("The term 'monetary relief' appears in § 512(a), (b)(1), (c)(1), and (d), but is notably absent from § 512(f). As a result, the damages an alleged infringer may recover under § 512(f) from 'any person' are broader than monetary relief."). A "[plaintiff] may seek recovery of nominal damages due to an unquantifiable harm suffered as a result of [defendant's] actions." *Lenz*, 815 F.3d at 1156 ("the DMCA is akin to a statutorily created intentional tort whereby an individual may recover nominal damages for a 'knowingly material misrepresent[ation] under this section [512]'") (quoting 17 U.S.C. § 512(f)).

Viral DRM has failed to show it suffered any harm "as a result of" Defendant's false counternotifications. Upon receipt of the DMCA takedown notice, YouTube took down the videos. (Dkt. No. 1-3 at 25-30.) There is no evidence YouTube put the videos back up upon receipt of the counternotifications, and the communication from YouTube indicates it would not

6

do so provided Viral DRM took "legal action against the uploader," which it did when it filed this copyright infringement action two days later. (*Id.*) The evidence Viral DRM offers in support of default judgment does not establish it incurred any actual damages because of Defendant's counternotifications. Rather, Clement's declaration in support of default judgment contends:

> Viral DRM incurred the expense of my time and the time of other employees who needed to review the defendant's YouTube videos and then submit the DMCA notices to get them removed. Viral DRM dedicates a team of people to this task. We need to prepare extensive documentation to support our claims, submit the claims, follow up with the claims, inform our attorneys of our claims, and participate in litigation concerning those claims. I have determined that for each counternotice the cost of the time that Viral DRM employees must devote to this process is $2,500 per counternotice.

(Dkt. No. 27-2 at ¶ 30.) This declaration establishes Clement's documented time is for preparation of the takedowns, not responding to the counternotifications; so, it does not demonstrate any injury arising from Defendant's "material misrepresentation" in the counternotifications. Viral DRM is therefore only entitled to nominal damages for its section 512(f) claim. *See Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, No. 21-CV-06536-EMC, 2024 WL 2193323, at *17 (N.D. Cal. May 15, 2024) ("In general, nominal damages are intended to recognize a plaintiff's legal injury when no actual monetary damages may be discerned.") (citing *Magnett v. Pelletier*, 488 F.2d 33, 35 (1st Cir. 1973)).

Accordingly, the Court awards Viral DRM nominal damages of $1.00 for each false counternotification for a total of $2.00. Viral DRM is entitled to post-judgment interest at the federal rate on all unpaid principal sums until the judgment is paid.[3] *See* 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

## CONCLUSION

For the reasons stated above, default judgement is GRANTED as to Viral DRM's Section 512(f) claim and it is awarded $2.00 in nominal damages plus post-judgment interest.

Viral DRM's motion for default judgment on the 17 U.S.C. §§ 501(b), 1201, 1202 claims

---

[3] Viral DRM has waived any claim to pre-judgment interest or attorneys' fees and costs, but suggests it might "seek an amendment of the judgment" later to recover prejudgment interest. (Dkt. No. 27-1 at 20.) Given the myriad of issues with Viral DRM's pursuit of its claims in this and the related actions, the Court cautions it against doing to.

United States District Court
Northern District of California

is DENIED and those claims are dismissed without leave to amend for lack of standing. To the extent Viral DRM now seeks leave to name the videographers as "nominal Plaintiffs," it is unclear what this even means. (Dkt. No. 39 at 6.) In support, Viral DRM cites a Supreme Court case from 1897 discussing in whose name a wrongful death action should be brought. *See Stewart v. Baltimore & O.R. Co.*, 168 U.S. 445, 449 (1897) (describing the person in whose name a wrongful death suit is brought a "nominal plaintiff."). When considering whether to grant leave to amend, the Court considers five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "Although a district court 'should freely give leave [to amend] when justice so requires,' the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting Fed. R. Civ. P. 15(a)(2); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)). Viral DRM has been afforded several opportunities to clarify its claims and the evidence in support of its claims. Each successive filing raises more questions than it answers. It is impossible to tell whether this is sloppiness or something nefarious, but the Court has expended tremendous resources trying to figure it out and has given Viral DRM chance after chance to clarify the record, but each response only muddies the record. Accordingly, the Court in its discretion denies leave to amend as to Viral DRM's 17 U.S.C. §§ 501(b), 1201, 1202 claims.

A separate judgment will follow.

This Order disposes of Docket Nos. 27 and 35.

**IT IS SO ORDERED.**

Dated: March 13, 2025

JACQUELINE SCOTT CORLEY
United States District Judge